UNITED STATES DISTRICT COURT                                    C/M
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
BRETT ARCHER                                             :
                                                         :
                              Petitioner,                :      **MEMORANDUM**
                                                         :      **<u>DECISION AND ORDER</u>**
                 -against-                               :
                                                         :      12 Civ. 6182 (BMC)
                                                         :
J.T. SMITH,                                              :
                                                         :
                              Respondent.                :
                                                         :
-------------------------------------------------------- X
**COGAN**, District Judge.

     Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging

his state court conviction for first degree assault and criminal possession of a weapon, for which

he received concurrent sentences totaling 22 years. Familiarity with the facts is assumed, but to

summarize, petitioner shot the victim, Dennis Thompson, twice, including once while Thompson

was lying motionless on the ground, after Thompson attempted to get petitioner to "cool off"

following verbal altercations between petitioner and others at a social club. Thompson survived

despite grievous permanent injuries, and he and two disinterested eyewitnesses testified against

petitioner at trial.

     Petitioner raises two points of error in his habeas petition, one from his direct appeal and

the other from post-conviction *coram nobis* proceedings. From his direct appeal, he repeats his

contention that the prosecutor's summation violated his right to due process of law because: (a)

she spent too much time detailing the injuries that Thompson had sustained without expressly

connecting those statements to the statutory requirement of "serious physical injury;" (b) when

referring to the legal elements of the crime, the prosecutor failed to mention the element that

petitioner must have intended to cause the serious physical injury; and (c) the prosecutor repeatedly gave her own opinion that petition was guilty. From his *coram nobis* petition, petitioner maintains his argument that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for failing to object to several witnesses' reference to petitioner's lineup identification.

For the reasons set forth below, the petition is denied.

## DISCUSSION

### I. Prosecutorial Misconduct in the Summation

On direct appeal, the Appellate Division held that this claim was "unpreserved for appellate review" and that "[i]n any event, the challenged remarks were proper because they constituted fair comment upon the evidence or fair response to the defense summation, or otherwise remained within the broad bounds of rhetorical comment permissible in closing argument." People v. Archer, 82 A.D.3d 781, 917 N.Y.S.2d 901 (2d Dep't) (citations and quotation marks omitted), leave to appeal denied, 16 N.Y.3d 893, 926 N.Y.S.2d 28 (2011) (table).

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is *independent* of the federal question and *adequate* to support the judgment". Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729–30, 111 S. Ct at 2554; Murden v.

Artuz, 497 F.3d 178, 191 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376, 122 S. Ct. at 885 (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1834 (1984)). If a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review. See, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011). Here, because petitioner's trial counsel failed to object to the prosecutor's summation, the Appellate Division properly invoked a state procedural bar.

Since the Appellate Division properly relied on a procedural bar, the issue becomes whether any ground exists for reaching the merits notwithstanding that procedural bar. Procedural default on state law grounds may be overcome by a petitioner who either demonstrates "'cause' for the default and 'prejudice attributable thereto,' or . . . that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris, 489 U.S. at 262, 109 S. Ct. at 1043 (citation omitted). Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, Murray v.

Carrier, 477 U.S. 478, 488–89, 106 S. Ct. 2639, 2645-46 (1986), the ineffective assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 451–52, 120 S. Ct. 1587, 1591-92 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc). A fundamental miscarriage of justice is characterized as "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray, 477 U.S. at 496, 106 S. Ct. at 2649.

Petitioner may have exhausted this ineffective assistance claim by raising it in the Appellate Division, but barely. There is no separate claim of ineffective assistance for failing to object to the summation; no reference to ineffective assistance at all in the point heading that challenged the summation; no claim of ineffective assistance anywhere in the text of the discussion of that point; and no citation to Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), or any other federal case discussing ineffective assistance under the Sixth Amendment. Instead, at the very end of the argument challenging the summation, petitioner acknowledged that his attorney had failed to preserve the point by objecting, and he appealed to the Appellate Division's "interests of justice" jurisdiction to hear the claim notwithstanding the lack of preservation. Petitioner then footnoted that sentence with the following:

> In the alternative, should the Court choose not to exercise its interest of justice jurisdiction, it should nonetheless reverse based on counsel's ineffectiveness for failing to object to improperly introduced testimony and any of these patently improper remarks. See People v. Lauderdale, 295 A.D.2d 539, 540 (2d Dept. 2002) (attorney's failure to object to improper summation comments, among other things, deprived defendant of effective assistance of counsel); People v. Lindo, 167 A.D.2d 558, 559 (2d Dept. 1990) (failure to object to prosecutor's inflammatory comments).

That single footnote is petitioner's only reference to ineffective assistance for failure to object to the summation. There is no mention of either of <u>Strickland</u>'s two requirements or argument as to how trial counsel's failure to object was objectively unreasonable or prejudicial.

Nevertheless, I find that the footnote was minimally adequate to exhaust the ineffective assistance claim. For one thing, the <u>Lindo</u> decision, cited in petitioner's footnote, cited to other state cases that employed a federal constitutional analysis on ineffective assistance. Moreover, the District Attorney responded to petitioner's footnote with a much fuller discussion of ineffective assistance, and the Appellate Division expressly addressed, and rejected, the ineffective assistance claim: "The failure of the defendant's attorney to object to the prosecutor's summation did not constitute ineffective assistance of counsel because counsel need not make an argument that has little or no chance of success. The defendant was afforded meaningful representation." <u>Archer</u>, 82 A.D.3d at 781, 917 N.Y.S.2d at 902 (internal citations omitted).[1]

But petitioner's failure to make any argument at all in the Appellate Division as to why counsel was ineffective makes it more difficult for petitioner to obtain federal habeas corpus relief from the Appellate Division's rejection of that claim. In order to do that, I would have to find that its decision was "contrary to, or involved an unreasonable application of, clearly established" authority of the United States Supreme Court. <u>See</u> 28 U.S.C. § 2254(d). The Supreme Court has clarified that this standard of review is extremely narrow, and is intended

---

[1] It may be appropriate for the Circuit to consider at some point whether <u>Daye's</u> definition of exhaustion should be revisited in light of the subsequent enactment of AEDPA, with its insistence on meaningful exhaustion, its narrowing of federal review of state convictions generally, and the practice that has developed among state appellate defense lawyers of alluding to federal claims only in passing, either by a federal citation in a point heading, or, as here, a conclusory assertion in a footnote. I am just not sure it is realistic to expect the state courts to seriously consider federal claims asserted in so perfunctory a fashion. However, in the instant case, since the Appellate Division did address the point, albeit with the same brevity as petitioner's appellate lawyer, and since <u>Daye</u> is of course controlling authority, I will deem the claim exhausted.

only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, ―― U.S. ―― , 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5 (1979) (Stevens, J., concurring)).

State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, ―― U.S. ―― , 131 S. Ct. 1305, 1307 (2011) (citing Renico v. Lett, ―― U.S. ―― , 130 S. Ct. 1855, 1862 (2010)), and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington, 131 S.Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, in a recent opinion, the Supreme Court clearly expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See Parker v. Matthews, ―― U.S. ―― , 132 S. Ct. 2148 (2012).[2]

---

[2] Harrington and Cavazos v. Smith, ―― U.S. ―― , 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" The Harrington/Cavazos standard may not quite require "judicial incompetence," id., but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," 131 S. Ct. 787, it certainly comes close. The Second Circuit has noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, 664 F.3d 20, 21-22 (2d Cir. 2011) (reversing its earlier decision granting habeas relief upon consideration of Cavazos).

Because <u>Strickland</u> pronounced a general rule and petitioner made no effort on appeal to explain how it applied to his case, the range of reasonable application of precedent available to the Appellate Division was broad indeed. As the Supreme Court has noted:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004). And in <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420 (2009), the Supreme Court confirmed that <u>Strickland</u> falls within the category of general rules: "[B]ecause the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

Having reviewed the prosecutor's summation under this narrow standard of review, I see nothing in the Appellate Division's rejection of petitioner's footnote that would be contrary to, or an unreasonable application of, Supreme Court authority.

First, to the extent the prosecutor stressed Thompson's injuries in her closing, it was because the statute required her to prove "serious physical injury." In any event, she did not overly dwell on the injuries. It took up a relatively small portion of her closing. If the details of the injuries sounded horrific, it was only because petitioner inflicted horrific injuries on Thompson. Petitioner's trial counsel was not unreasonable in declining to object to these statements.

Second, there is no Supreme Court case requiring a prosecutor to recite every element of the crime in her closing argument, and the contention that the prosecutor had to identify her burden of proving "intent" in a case where the evidence showed overwhelming that petitioner shot his victim twice, including once after the first shot put him down, was absurd, especially in light of the trial court's detailed instructions on the elements of each charge. These instructions included, as to the assault charge, the element of intent. The trial court also, of course, gave the standard instruction that to the extent its instruction and the attorneys' statements of the law in their summations were inconsistent (not that there was any inconsistency here), the jury had to follow the court's instructions.

Finally, although New York law imposes some prohibition on the prosecutor portraying herself as a witness during summation in order to preserve a defendant's right to due process, see People v. Paperno, 54 N.Y.2d 294, 300-01, 445 N.Y.S.2d 119 (1981), I have reviewed the summation and there is nothing approaching that here. The most the prosecutor did was specifically identify each piece of evidence pointing to petitioner and then say, in effect, "this shows that defendant committed the crime." A prosecutor is supposed to argue that a defendant committed the crime and doing so does not deprive a defendant of due process.

Under Strickland, the Appellate Division had to determine, in the first instance, whether petitioner's trial counsel was "objectively unreasonable" in failing to object. See Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. Even without the broad deference afforded to the Appellate Division's decision for the reasons set forth above, there was nothing objectionable about the prosecutor's summation. There is thus no cause to excuse petitioner's procedural default, and his argument is procedurally barred.

## II. Ineffectiveness of Appellate Counsel

Petitioner claims, as he did in his *coram nobis* petition, that his appellate counsel was ineffective for failing to raise an alleged error that his trial counsel committed. The alleged trial error arose in the context of petitioner's identification by various witnesses. First, the arresting detective, Wallen, testified that after petitioner's arrest and after speaking to several witnesses in the case, Wallen set up a lineup for the victim, Thompson, which included petitioner. Wallen described the process by which he had set up the lineup to make sure that Thompson did not encounter petitioner before the lineup. Wallen further testified that he arranged for another detective, Ras, who had no involvement with the case, was from another precinct, and did not know petitioner was the suspect or who the fillers were, to conduct the lineup (thus, a "double blind" lineup), at which Wallen was not present. Ras testified as to his involvement in the lineup and his lack of knowledge as to who in the lineup was the suspect. Neither detective testified as to whom Thompson picked out of the lineup. Rather, Thompson had already testified that he had picked petitioner out of the lineup, and further testified that petitioner was the man who had shot him. The prosecutor introduced a photograph of the lineup during Wallen's testimony without objection.

Petitioner contended in his *coram nobis* petition, and repeats the contention here, that his trial counsel was ineffective for not objecting to the introduction of the lineup photograph, and for allowing the detectives to "bolster" Thompson's identification testimony by describing the lineup process. He contends that this violated the "Trowbridge Rule," see People v. Trowbridge, 305 N.Y. 471, 113 N.E.2d 471(1953), which prohibits police officers from testifying as to a witness's lineup identification of a defendant when the eyewitness has testified that he did so.

Based on this, petitioner further contends that his appellate counsel was ineffective for not raising this alleged trial error. The Appellate Division summarily denied his *coram nobis* petition on the merits, and the Court of Appeals denied leave to appeal.[3] People v. Archer,98 A.D.3d 524; 948 N.Y.S.2d 915 (2d Dep't), leave to appeal denied, 20 N.Y.3d 930, 957 N.Y.S.2d 690 (table).

Courts must determinate claims of ineffective assistance of appellate counsel by applying the Strickland standard. Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764 (2000). Specifically, a petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. It is well-settled that "[a]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Id. at 288, 120 S. Ct. at 765. "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). To demonstrate prejudice for such an error, a petitioner must establish "that there was a reasonable probability that his claim would have been successful before the state's highest court." Id. at 534 (internal brackets and quotation marks omitted).

---

[3] Petitioner appears to have filed two *coram nobis* petitions, one on August 26, 2011 and a second on March 17, 2012. The petitions are substantially identical except the second one referred expressly to a claim of ineffectiveness of trial counsel which should have been raised by appellate counsel. The Appellate Division denied both on the merits in identically worded decisions before the same panel, but petitioner sought leave to appeal only as to the latter. See People v. Archer, 92 A.D. 3d 952, 928 N.Y.S.2d 911 (2d Dep't 2012) (first *coram nobis* motion).

In this Court, review of the Appellate Division's decision is under the deferential standard described above. Under that demanding standard, I cannot find that the Appellate Division unreasonably applied Supreme Court authority.

As to Strickland's first factor, objective unreasonableness, the issue at trial that petitioner is raising is known as "inferential bolstering" under New York law. "Inferential bolstering" occurs where, after a witness or victim has identified the defendant as the perpetrator, a subsequent police witness does not expressly state that a witness previously identified the defendant, which would be prohibited under Trowbridge, but the police witness's testimony inexorably implies that conclusion nevertheless. New York law is not clear as to the extent to which inferential bolstering falls within the Trowbridge rule. For example, "[t]estimony … which simply describes what an officer did after conducting an identification procedure does not constitute inferential bolstering." Moore v. Conway, No. 08–CV–6390T, 2010 WL 4117411, at *11 (W.D.N.Y. Oct. 20, 2010) (citing People v. Cunningham, 233 A.D.2d 845, 846, 649 N.Y.S.2d 629 (4th Dep't 1996)). Indeed, it appears that "inferential bolstering" is only improper where the police witness has conferred with the identification witness and the identification witness made the identification prior to arrest, compare People v. Holt, 67 N.Y.2d 819, 821, 501 N.Y.S.2d 641 (1986), with People v. Reynolds, 169 A.D.2d 740, 564 N.Y.S.2d 779 (2d Dep't 1991). That was not the case with respect the lineup here; petitioner was already under arrest at the time of the lineup. Moreover, many New York cases apply Trowbridge only where the police witness expressly corroborates the eyewitness's identification, thus rejecting any prohibition on "inferential bolstering." See Ennis v. Walker, No. 00 civ 2875, 2001 WL 409530, *22 (S.D.N.Y. April 6, 2001) ("[W]hile Detective Augustus testified at trial regarding the lineup, he did so without stating that an identification had been made. As such, his testimony was

admissible under New York law.") (collecting cases). I therefore cannot find either that petitioner's trial counsel was objectively unreasonable in not objecting to the testimony and photographs, or, even one step further removed, that petitioner's appellate counsel was objectively unreasonable in not choosing to raise this point.[4]

More importantly as to appellate counsel's decision, I cannot see any way in which petitioner was prejudiced by his trial counsel's failure to object. The evidence against him was truly overwhelming. Three unrelated eyewitnesses, including the victim, identified petitioner as the person who shot Thompson. Forensic DNA evidence found on a hat at the crime scene matched petitioner's DNA. Video surveillance showed petitioner leaving the scene of the crime after the shooting and petitioner was arrested after having fled to Florida. Any role that the purported "inferential bolstering" in Wallen's testimony may have played in petitioner's conviction was undoubtedly insignificant compared to this other evidence.

Under the deferential standard of review, appellate counsel was not constitutionally ineffective for playing the bad hand that he had been dealt in the way that he did. The fact is that petitioner appears to have had a trial free of any arguably material error. Appellate counsel's choice of one argument that was highly unlikely to succeed over another argument equally unlikely to succeed does not support the conclusion that the Appellate Division improperly applied Strickland.

---

[4] Trowbridge has since been limited by N.Y. C.P.L. §60.25 to not apply in situations where the lineup witness is unable to identify the defendant at trial. See People v. Lagana, 36 N.Y.2d 71, 365 N.Y.S.2d 147 (1975); People v. Nival, 33 N.Y.2d 39, 353 N.Y.S.2d 409 (1974). Since Thompson identified petitioner at trial, the statute does not apply.

**CONCLUSION**

The petition for a writ of habeas corpus is denied and the case is dismissed. Because the petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. <u>See</u> 28 U.S.C. § 2253. Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 82 S. Ct. 917 (1962).

**SO ORDERED.**

                                                    _____
                                                                  U.S.D.J.

Dated: Brooklyn, New York
       March 16, 2013